IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACY MURRAY, | : | |
| | : | |
|     **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.:** |
| v. | : | |
| | : | **2:11-CV-6900-CDJ** |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
|     **Defendants.** | : | |

**MEMORANDUM**

Judge C. Darnell Jones, II                                                                July 31, 2014

Pending before the court is a motion for summary judgment, (Doc. No. 29), filed by the City of Philadelphia, seeking dismissal of plaintiff's state law and §1983 municipal liability claims. In response, plaintiff withdraws her state law claims but argues that she is entitled to a jury trial on her §1983 claims. As such, the court will only address plaintiff's Count V of the complaint, the §1983 claim in which plaintiff alleges that the city maintained an unconstitutional policy, custom, or practice. After a thorough review of the record, the court will **GRANT** the motion for summary judgment.

**BACKGROUND**

This case arises out of a shootout that occurred on May 9, 2011, when defendants Halbher and Erbele, police officers for the City of Philadelphia, responded to a radio call reporting a man with a handgun in the vicinity of 2000 East Monmouth Street. (Doc. No. 29, at 4.)[1] When they arrived at the scene, they

---

[1] Plaintiff fails to point to any evidence in the record to support a dispute as to the first twenty-eight paragraphs of defendant's statement of facts. Therefore, these

spotted Mr. Purnell, who immediately looked in the direction of the officers and began to walk away. (*Id.*) As Officer Halbher exited his vehicle "in an attempt to make contact with [the suspect]," Mr. Purnell "reached into his waistband and made a tugging motion." (*Id.*) Officer Halbher told him to stop and to show his hands, but Mr. Purnell ignored his orders and began running down Monmouth Street. (*Id.*) Defendant Halbher pursued Mr. Purnell on foot while defendant Erbele followed in the patrol car.

As Mr. Purnell ran, he continued to tug at his waistband and pulled out a "long black handgun." (*Id.* at 5.) Defendants yelled at Purnell to drop his weapon, but he turned onto Coral street and continued running, at which point defendants lost sight of him. (*Id.* at 5.) When they finally caught up with him at the corner of Monmouth and Coral streets, Purnell raised his handgun and pointed it at defendant Erbele. (*Id.*) In response, defendant Erbele fired his weapon four times, exited his patrol car, and continued pursuing Mr. Purnell on foot. (*Id.*) A subsequent investigation determined that one of Officer Erbele's shots struck Mr. Purnell in his right hand, between the palm and the thumb. (Doc. No. 32, Attach. 1, at 3.) Defendant Halbher testified that (at the time) he believed that Mr. Purnell was the one shooting and that defendant Erbele had been shot. (Doc. No. 32, Attach. 1, at 3.)

The chase continued until Mr. Purnell ran into a house at the intersection of Coral and Birch streets.[2] (Doc. No. 29, at 5.) Defendants followed him into the structure and found Mr. Purnell sitting on a couch. (*Id.*) They immediately drew

---

facts are deemed admitted. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . .").

[2] Police later determined that Mr. Purnell did not live at the residence, nor did he know anyone that resided there. (Doc. No. 29, at 5.)

their firearms and shouted "drop the gun . . . [l]et me see your hands." (*Id.*) The parties sharply dispute what happened next. Defendants claim, "[Purnell] kind of looked at me nervously as if he was surprised that I saw him there and he quickly moved with both his hands, reached to his right side area, which was the side that I saw him pull the gun the first time." (*Id.*) Plaintiff's story is considerably different. She claims that Mr. Purnell had his hands flat on stomach and chest and, when the officers told Mr. Purnell to drop the gun, he put his hands up, palms forward, and never reached to his right side. (Doc. No. 32, Attach. 1, at 4-5.) She also claims he appeared as though he was dying because he was "slouched down in the couch." (Doc. No. 32, Attach. 1, at 3.)

Regardless of Mr. Purnell's reaction, Officer Halbher shot Mr. Purnell three times, killing him on the spot. A search later revealed that Mr. Purnell had discarded his handgun before entering the residence. (Doc. No. 29, at 6.) Officer Erbele testified that he saw a trail of blood on the sidewalk, steps, stoop, doorsill and door during the pursuit. (Doc. No. 32, Attach. 1, at 4.) Officer Halbher, however, testified that he did not see any trace of blood at the time. (*Id.*) Both officers testified that they did not actually see a gun on Mr. Purnell's person when he was seated on the couch. (*Id.*)

## **DISCUSSION**

Any inquiry into municipal liability must necessarily begin with *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). In that case, the Supreme Court rejected *respondeat superior* as a basis for liability under 42 U.S.C. §1983 and held:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694.

As an initial matter, it is worth clarifying for the record the specific kind of municipal liability propounded by plaintiff. The complaint appears to suggest that the City of Philadelphia is liable under *Monell* on a number of grounds, including "[i]nadequate and negligent screening of applicants for employment with the Philadelphia Police Department," "[i]nadequate and negligent hiring of Philadelphia police officers," "[i]nadequate and negligent training of Philadelphia police officers," "[i]nadequate and negligent supervision of Philadelphia police officers," "[c]ondoning a pattern and practice of unnecessary, unreasonable and excessive use of force by Philadelphia police officers," "[f]ailing to properly monitor, investigate and punish the unnecessary, unreasonable and excessive use of force by Philadelphia police officers," and "[c]ondoning a pattern and practice of fabricating false accounts of police misconduct in order to cover up the misconduct and to secure the unlawful arrest of victims of such misconduct." (Compl. at 13-14.) However, defendant moves for dismissal of all § 1983 claims, (Def's Br. at 1-2), and plaintiff only opposes the motion on two grounds: (1) the city's failure to train and supervise its officers, and (2) for its failure to properly monitor, investigate and punish the exercise of excessive force by defendant police officers. Plaintiff's brief cannot be reasonably construed as opposing defendant's motion on any other grounds, and, even if it could, plaintiff has failed to cite any facts supporting those

4

theories of liability. Therefore, to the extent plaintiff raises other theories of liability, they will be dismissed at the outset.

## I.     FAILURE TO TRAIN

In asking this court to dismiss Count V, defendant relies primarily on the landmark Supreme Court decision of *City of Canton v. Harris*, where the Court found "there are limited circumstances in which an allegation of failure to train can be the basis for liability under § 1983." 489 U.S. 378, 387 (1989) (quotation omitted). In that case, the respondent, Mrs. Harris, was arrested by police and taken to the police station, where she "was found sitting on the floor of the wagon." *Id.* at 381. Police asked her if she needed medical attention. *Id.* She responded with an incoherent answer and "slumped to the floor on two occasions" when she was later being processed. *Id.* Nonetheless, officers never provided her with medical care or reported her condition to medical authorities. *Id.* When she was released from custody, she was found to be suffering from severe emotional ailments and spent one week in the hospital and another year in outpatient treatment. *Id.*

Mrs. Harris subsequently sued the City of Canton for violating her right to receive "necessary medical attention while in police custody." *Id.* A jury found in her favor, and the city appealed. *Id.* at 382. The Sixth Circuit affirmed the district court's decision insofar as it held that a reasonable juror could find that the City of Canton had a policy or custom of granting "*carte blanche* authority with the police supervisor" to determine when medical treatment was necessary and that such a grant of discretion "was grossly negligent or so reckless that future police misconduct was almost inevitable or substantially certain to result." *Id.* at 382-83.

The circuit court ordered a new trial and the city petitioned the Supreme Court of the United States for a writ of *certiorari*, which was ultimately granted.

The Supreme Court noted that there was a substantial split of authority among the lower courts as to the degree of fault necessary to hold a municipality liable for failing to properly train its employees. *Id.* at 388. The Court clarified *Monell* by holding, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the right of persons with whom the police come into contact." *Id.* The court chose to define deliberate indifference as a "conscious choice by a municipality," a choice that can fairly be said to amount to policy. *Id.* at 389 (internal quotations omitted).

The Court, therefore, created a two-part test for failure-to-train liability: the first issue is whether the training program is adequate and the second is whether the inadequate training "can justifiably be said to represent city policy." *Id.* at 390 (internal quotations omitted). In other words a municipality will only be liable for inadequate training if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* Moreover, the court said:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. *See Springfield v. Kibbe*, 480 U.S., at 268, 107 S.Ct., at 1120 (O'CONNOR, J., dissenting); *Oklahoma City v. Tuttle*, *supra*, 471 U.S., at 821, 105 S.Ct., at 2435 (opinion of

6

> REHNQUIST, J.). It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in jury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* at 390-91.

In sum, courts should be careful not to impose liability merely because municipal training *could* have been more thorough or comprehensive – that question will almost always be answered in the affirmative. Rather the question is whether the training *should* have been more thorough or comprehensive, an inquiry that focuses on the deliberate indifference standard. *Id.* at 392. "[P]ermitting cases against cities for their failure to train employees to go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities," something expressly forbidden by *Monell*. *Id.* (internal quotations omitted).

It should be noted that the Third Circuit has distinguished between cases in which a plaintiff attempts to prove a failure-to-train claim by showing a pattern of unconstitutional conduct and cases in which a plaintiff attempts to prove a failure-to-train claim through a single instance of unconstitutional conduct. *Carswell v. Borough of Homestead*, 381 F.3d 235 (3d Cir. 2004). In *Carswell*, the Circuit opined:

> A plaintiff must identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact. *City of Canton*, 489 U.S. at 388, 109 S.Ct. 1197. This typically requires proof of a pattern of underlying

7

constitutional violations. *Berg v. County of Allegheny*, 219 F.3d 276 (3d Cir. 2000). Although it is possible, proving deliberate indifference in the absence of such a pattern is a difficult task. *See id.*

381 F.3d at 244.

Plaintiff appears to argue that there was a pattern of underlying constitutional violations. She states:

> This fatal shooting was not an isolated event. Rather, it followed a history and pattern of police shootings in connection with police pursuits of suspects into buildings. During the five-year period between January 1, 2006[,] and December 31, 2010, out of a total of 451 police shootings, approximately 5.5% of them (25 in number) involved police pursuits of suspects into buildings. (Plaintiff's Fact 65 and accompanying record citation.)

(Doc. No. 32, at 6.)

Plaintiff's assertion is unsupported by record evidence indicating that any of these shootings violated the constitutional rights of the "suspects" cited in plaintiff's brief. As such, plaintiff has failed to point to evidence in the record of a pattern of underlying constitutional violations, so her burden is correspondingly more difficult. 381 F.3d at 244 ("Although it is possible, proving deliberate indifference in the absence of such a pattern is a difficult task.").

The record demonstrates that plaintiff has failed to meet her burden of pointing to sufficient evidence from which a reasonable juror could find deliberate indifference on the part of the City of Philadelphia. Defendants Halbher and Erbele each graduated from the Police Academy. (Doc. No. 29, at 6.) Halbher received 871 total hours of training, 80 hours of which was basic firearm training. (Doc. No. 29, at 7.) His firearm training included 44 hours of training on the use of force and on the topic of self-defense. (Doc. No. 29, at 7.) Defendant Erbele received 1020 hours of

training, which also included 80 hours of firearm training and 44 hours of training on the use of force and self-defense, respectively. (Doc. No. 29, at 7.) This training included "tactical training and exercises in firearms [sic] training simulator which puts the officers in real life 'shoot/no shoot' situations." (Doc. No. 29, at 7.) Moreover, the Philadelphia Police Department maintains a policy on the use of deadly force by police officers and requires its officers to "review this directive on a yearly basis as part of their MPOETC required firearms certification." (Doc. No. 29, at 7.) Plaintiff argues that these facts are disputed but provides no evidence to rebut their veracity. As such, she has not met her burden of proving that there is a genuine issue of material fact concerning the training that Officers Erbele and Halbher received from the City of Philadelphia. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (burden of production shifts from moving party to nonmoving party). The court finds that no reasonable juror could conclude that the City of Philadelphia acted with deliberate indifference to the rights of the decedent under these facts.

This conclusion is bolstered by *Carswell v. Borough of Homestead*. 381 F.3d 235 (3d Cir. 2004). In that case, the plaintiff brought excessive force and failure-to-train claims against the Borough of Homestead when her husband was shot by police while resisting arrest. *Id.* at 238. After trial, the district court granted judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).[3] On

---

[3] The Supreme Court has said:

> And we have noted that the "genuine issue" summary judgment standard is "very close" to the "reasonable jury" directed verdict standard: "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial

9

appeal, the Third Circuit found that borough police officers received yearly training and that they were directed to become familiar with the policy manual, "which covered 'the continuum of force.'" *Id.* at 245. The court held:

> This evidence did not establish a lack of training on the use of deadly force that amounted to a deliberate indifference, nor does it demonstrate a pattern of underlying unconstitutional violations that should have alerted Homestead to an inadequate training program. The record does not meet the high burden of proving deliberate indifference, nor does it show that Homestead's actions caused a constitutional violation. We conclude that the plaintiff failed to present evidence from which a reasonable jury could find municipal liability.

*Id.*

Like in *Carswell*, the City of Philadelphia provided significant training to defendants Erbele and Halbher. Perhaps that training could have been more thorough and comprehensive, but the Supreme Court has cautioned courts that the relevant inquiry is whether the municipality was deliberately indifferent to the rights of its citizens. To rest liability upon the efficacy of further training would "engage the federal courts in an endless exercise of second-guessing municipal employee-training programs" and "would implicate serious questions of federalism." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

Plaintiff's expert argues that the city's training did not comport with the "national constitutional standard" because it "instruct[s] officers to use 'only the minimum amount of force necessary' and to use deadly force 'only as a last resort.'" (Doc. No. 32, at 5.) Instead, the expert argues, "[t]he applicable constitutional

---

and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

standard for excessive police force is that police must use no more force than is objectively reasonable under the totality of the circumstances." (*Id.*) Plaintiff argues that these two divergent standards "can be confusing for officers." (*Id.* at 6.) To be sure, there are subtle differences between the phraseology of these two standards, but the court is unable to see any substantial distinction between the two that would be dispositive of the failure-to-train issue. Moreover, the two standards do not appear to be contradictory, and to find for plaintiff on this issue would condemn any police training program whenever the *form*, rather than the *substance* of the instruction, diverged from the constitutional standard for the use of force. Such a holding would be inappropriate and unworkable.

Next, plaintiff argues that the city failed to collect data on incidences in which officers pursued suspects into structures. (*Id.* at 6-7.) She also argues that the city has failed to train its officers on how and when to pursue suspects into buildings. (*Id.*) As to the city's alleged failure to collect and track data, plaintiff fails to show how the issue weighs on the adequacy of the city's training on the use of firearms. Furthermore, plaintiff has not convinced the court that training on the subject of "following suspects into buildings" is necessary and, conversely, that the failure to provide such training establishes deliberate indifference to the rights of Mr. Purnell. "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city could have done to prevent the unfortunate incident." *Carswell v. Borough of Homestead*, 381 F.3d 235, 245 (3d Cir. 2004) (internal quotations omitted). The standard for failure-to-train claims is deliberate indifference, and the record simply

11

does not show such callous disregard of plaintiff's rights as to allow plaintiff's failure-to-train claim to go to a jury.

## II. FAILURE TO PROPERLY MONITOR, INVESTIGATE AND PUNISH

In arguing that the City of Philadelphia failed to monitor, investigate and punish officers for the use of excessive force, plaintiff essentially argues that the city acquiesced to this unlawful practice, thereby making it a municipal custom or policy. She relies primarily on *Beck v. City of Pittsburgh*. 89 F.3d 966 (3d Cir. 1996). In that case, the Third Circuit held that a custom may be established by showing that there had been a number of complaints regarding excessive force and that the city improperly investigated those complaints. *Id.* at 975-76. The Circuit held that the prior complaints put the Chief of Police on notice that the defendant police officer had a propensity to use excessive force. *Id.* at 973-74. The city's failure to intervene constituted acquiescence to the officer's conduct and therefore established a custom. *Id.* at 974.

Here, plaintiff simply fails to point to any prior complaints regarding excessive force, let alone any instances in which the city declined to investigate or engaged in inadequate investigations of prior complaints. Essentially, plaintiff is left to argue that the city failed to properly investigate *in this case*. However, police conduct only establishes custom, "when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law." 89 F.3d at 971 (quotation omitted). An isolated incident of investigative incompetence – assuming arguendo that the investigation in this case was mishandled – is rarely sufficient to establish a custom. *Peters v. Community*

12

*Educ. Centers, Inc.*, 11-CV-850, 2014 WL 981557, *7 (E.D.Pa. March 13, 2014); *Davis v. City of New York*, 75 F.App'x 827, 830 (2d Cir. 2003) ("*[T]wo incidences* of unconstitutional conduct by low-level employees . . . can never provide a reasonable basis for finding a *widespread* or *well-settled* custom.").

Custom may be established by a single instance of police misconduct if plaintiff provides proof that city policymakers had knowledge of the misconduct and acquiesced to its commission by failing to act. Here, however, plaintiff adduces no evidence that remotely suggests that city policymakers knew the details of the investigation into the conduct of defendants Halbher and Erbele on this occasion. As such, plaintiff has failed to establish a municipal policy or custom.

## CONCLUSION

In light of the foregoing, defendant's motion for summary judgment, (Doc. No. 29.) is **GRANTED**. Plaintiff's claims against the City of Philadelphia are **DISMISSED**.

BY THE COURT:

/s/ C. Darnell Jones, II  J.
C. DARNELL JONES, II  J.